UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PATSY MARIE BATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CV-0805-CVE-FHM |
| | ) | |
| BOARD OF COUNTY COMMISSIONERS OF MAYES COUNTY and AARON PETERS, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Now before the Court are Defendant Board of County Commissioners of Mayes County's Motion for Summary Judgment and Brief in Support (Dkt. # 55) and Defendant Aaron Peters' Motion for Summary Judgment (Dkt. # 58). Defendant Board of County Commissioners of Mayes County (the Board) argues that it is not a proper party under 42 U.S.C. § 1983, because it has no control over the operation of the Mayes County Jail and plaintiff should have sued Mayes County Sheriff Mike Reed (the Sheriff) if she intended to challenge the conditions of her confinement. Dkt. # 55, at 15. Defendant Aaron Peters argues that he is entitled to qualified immunity, because plaintiff cannot show that he violated plaintiff's rights under the Fourth Amendment to the United States Constitution. Dkt. # 58, at 3.

**I.**

In September 2013, Peters applied to work as a detention officer for the Mayes County Sheriff's Office, and Assistant Jail Administrator Mitchell Goodman identified Peters as a top candidate for the position. Dkt. # 55-2, at 1. As part of the application process, a Triple I background check was performed, and the background check revealed that Peters had no criminal

record or history of sexual misconduct. Id. at 2. Peters was interviewed by Goodman and Sergeant Keisha Oberg, and they learned that Peters was recently divorced. Dkt. # 55-1, at 18-20. Goodman and Oberg warned Peters that female inmates would play "con games" with the guards and that they might "try to use their sexuality to get the jailers to do favors for them." Dkt. # 55-2, at 2. Goodman specifically asked Peters what he would do if a female inmate showed Peters her breasts, and Peters responded that he would tell someone. Id. Goodman advised Peters that the proper course of action would be to tell the inmate to lower her shirt and to immediately complete a report documenting the incident. Id. Goodman also advised Peters to treat all male and female inmates in the same manner. Id. Goodman provided Peters with a copy of the written jail standards and the policies and procedures for the Mayes County Jail. Id. Peters advised Goodman that he could read slowly, but he never stated that he could not read at all. Dkt. # 81-1, at 10. Peters admits that he received the jail standards and policies and that he signed a paper stating that he had read them, but did not actually read the documents. Dkt. # 55-1, at 5. Goodman recommended that Peters be called back for a second interview with Goodman and the Sheriff, and Peters was hired as a detention officer following the second interview. Dkt. # 55-2, at 2.

On November 9, 2013, Patsy Marie Bates was booked into the Mayes County Jail on charges of failure to appear and obtaining a controlled dangerous substance by fraud. Dkt. # 55-6. Bates completed a medical questionnaire indicating that she suffered from bi-polar disorder and that she had suffered a seizure two weeks before she was booked. Dkt. # 75-6. On November 14, 2013, plaintiff was taken to the Mayes County Medical Center because it appeared that she was having a seizure, and her medical records show that she was preliminarily diagnosed as having a "Seizure, closed head injury w/o Cranial Wound . . . ." Dkt. # 75-7, at 1. Tabitha Smith was initially assigned

2

to guard Bates at the hospital, and Smith was relieved by Jerrod Salyers. Peters arrived at 7:00 a.m. on November 15, 2013 to replace Salyers. Dkt. # 55-1, at 4, 9. Bates claims that Salyers told her that her "boyfriend" would be coming to guard her, and Salyers allegedly identified Bates' boyfriend as Peters. Dkt. # 75-11, at 14. Bates claims that Peters entered the room when he began his shift, and she fell asleep after talking to Peters about his impending divorce. Dkt. # 75-11, at 15-20. Bates states that Peters was hovering over her when she woke up and he started to kiss her, and the door to the hospital room was shut. Id. at 21. She claims that she went in and out of consciousness the rest of the day, but every time she woke up Peters was sexually assaulting her. Id. at 24-25. Peters' shift ended at 7 p.m. and Jennifer Eastwood relieved Peters, and Bates did not mention anything about Peters' conduct during Eastwood's 12 hour shift. Dkt. # 55-11. Peters relieved Eastwood at 7 a.m. on November 16, 2013, and Bates states that Peters sat in her room and that he rubbed her hair at one point. Dkt. # 55-12, at 20-22. Bates was discharged from the hospital on November 16, 2013 and she returned to the Mayes County Jail, but she was brought back to the hospital within an hour of returning to the Mayes County Jail because it appeared that she had another seizure.[1] Dkt. # 55-8, at 3-4.

On November 18, 2013, a female charge nurse at the Mayes County Medical Center, Whitney Waldeck, contacted the jail administrator, Kyle Murry, and asked to meet with Murry about some unusual behavior that occurred while Bates was at the hospital. Dkt. # 55-3, at 4. The nurse told Murry that door to Bates' hospital room had been shut for long periods of time and one of the

---

[1] One of the nurses at the Mayes County Medical Center believed that plaintiff feigned the second seizure in order to return to the hospital. Dkt. # 55-8, at 2-5. The parties dispute whether plaintiff actually had a second seizure, but it is not necessary for the Court to resolve this issue to rule on the pending motion for summary judgment.

3

guards did not sit outside of the room like the other guards, and Murry asked the Mayes County Sheriff's Office (Sheriff's Office) to initiate an investigation. Id. at 8. Tammy Steddum Ward of the Sheriff's Office interviewed Waldeck, and Waldeck reported that on November 15, 2013 that she entered Bates' hospital room and observed that Bates' pants were partially pulled down and Peters was standing near the bed. Dkt. # 55-7, at 4. Waldeck believed that Bates was pretending to be asleep, and throughout the day Peters would shut the door to Bates' room. Id. Ward next interviewed Bates, and Bates stated that Peters had touched her and inserted his fingers into her vagina. Id. Peters also allegedly watched Bates take a shower. Id. Bates claimed that Peters had been unusually attentive to her at the jail but he had never touched her inappropriately at the jail. Id. The investigation was turned over to the Pryor Police Department (PPD) due to a potential conflict of interest with the investigation of a jail employee by the Sheriff's Office, and PPD Detective Chuck Ward interviewed Peters. Peters provided a voluntary written statement admitting that he "had a moment of weakness and she kiss me which lead to fringering [sic]." Dkt. # 55-13. However, Peters claimed that Bates was flirting with him and that she initiated the encounter by kissing him. Id.

Peters was arrested on a charge of raping Bates and he was booked in the Mayes County Jail on November 19, 2013. Dkt. # 55-16. Peters' employment as a detention officer was terminated on the same day. Dkt. # 55-17. On January 22, 2015, Peters pled no contest to a charge of assault with the intent to commit a felony. Dkt. # 55-18. Other than the incident with Peters, the Sheriff was unaware of any other incident in which a female inmate alleged that she was assaulted by a detention officer, although Peters testified during his deposition that another detention officer

4

suggested that a former detention officer may have had sex with a female inmate. Dkt. # 55-4, at 6-8; Dkt. # 75-2, at 20-22.

On November 26, 2013, Bates filed this case in Mayes County District Court alleging that Peters violated her rights under the Fourth Amendment to the United States Constitution. She claims that she was sexually assaulted and raped by Peters while she was a pretrial detainee held in the custody of the Mayes County Jail. Dkt. # 2-2, at 1-2. She has not alleged any facts suggesting that she was wrongfully arrested or that she was subject to an unlawful search or seizure. Bates also asserts claims against the Board for alleged violations of her rights under the federal and Oklahoma constitutions. Id. at 2-3.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the

5

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

Peters argues that plaintiff has failed to show that she was unlawfully arrested or seized under the Fourth Amendment, and he asks the Court to enter summary judgment in his favor. Plaintiff responds that her former attorney made a citation error in the petition and it is clear from the facts alleged that she intended to allege a deliberate indifference claim under the Fourteenth Amendment, and she argues that there are genuine disputes as to material facts that preclude summary judgment on this claim.

Peters' primary argument is that he did not violate plaintiff's rights under the Fourth Amendment, and he argues that plaintiff should not be permitted to add a new Eighth Amendment[2] claim at such a late stage of the case. Dkt. # 83, at 4. Peters is correct that the petition states that

---

[2] Plaintiff was a pretrial detainee and the Eighth Amendment does not directly apply to her. Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009). However, under the Fourteenth Amendment, pretrial detainees are entitled to same protections as convicted inmates while incarcerated. Id.

6

"plaintiff was subjected to unreasonable seizures in violation of the 4th Amendment to the United States Constitution and applicable in this context thru [sic] the 14th Amendment." Dkt. # 2-2, at 2. However, the petition clearly alleges that plaintiff was sexually assaulted and raped by Peters while she was in the Mayes County Medical Center as a pretrial detainee and that Peters' actions showed "deliberate indifference to the known federal constitutional rights of Plaintiff." Id. at 2. In a § 1983 case, a complaint sufficiently alleges a claim if it provides a defendant notice of the facts giving rise to an alleged constitutional violation, and the complaint must allege that the defendant's alleged misconduct was a violation of clearly established law. Keith v. Koerner, 707 F.3d 1185 (10th Cir. 2013). In this case, the petition mistakenly identifies the Fourth Amendment as the constitutional basis for plaintiff's claim, but it is clear from the petition that plaintiff is not alleging that she was wrongfully arrested or detained. In fact, the petition states that plaintiff was a pretrial detainee and she does not challenge the validity of her arrest. Dkt. # 2-2, at 1. Instead, the allegations of the petition are focused on the alleged sexual assaults committed by Peters, and the petition alleges that defendants are liable for acts rising to the level of deliberate indifference for her health and safety. Id. at 2. The discovery materials submitted as part of the summary judgment record show that defendants conducted extensive discovery on the alleged sexual assaults and that they understood that plaintiff was alleging a deliberate indifference claim. In particular, it is apparent that Peters was not misled by the erroneous citation to the Fourth Amendment in the petition and he will not be prejudiced by having to defend against plaintiff's claim that she was sexually assaulted and raped while she was a pretrial detainee.

Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983,

a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007) The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to a plaintiff's claims. Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006). The Tenth Circuit applies a two-step analysis to determine if a defendant is entitled to qualified immunity. A plaintiff must allege that the defendant's actions violated a specific constitutional right and, if the plaintiff has alleged a constitutional violation, the plaintiff must show that the constitutional right was clearly established when the conduct occurred. Toevs. v. Reid, 685 F.3d 903, 909 (10th Cir. 2012). A court has the discretion to consider the steps in whatever order is appropriate under the circumstances. Id. at 910 (citing Pearson v. Callahan, 555 U.S. 223 (2009)). Plaintiff bears the burden to prove that her constitutional rights were violated and that the law giving rise to her claims was clearly established at the time the acts occurred. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

When the events giving rise to this case occurred, plaintiff was a pretrial detainee who was in the custody of the Mayes County Sheriff and, under the Fourteenth Amendment, a pretrial detainee must be treated with "at least the same standard of care prison officials owe convicted inmates." Blackmon v. Sutton, 734 F.3d 1237, 1244 (10th Cir. 2013). The Eighth Amendment

standards for treatment of prisoners are applicable to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. Martinez, 563 F.3d at 1088. "Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998). However, not every injury or harm suffered by an inmate gives rise to liability against prison officials, and an aggrieved inmate must show that prison officials acted with deliberate indifference to his or her needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Under Farmer v. Brennan, 511 U.S. 825 (1994), a deliberate indifference claim has two components: (1) "the deprivation alleged must be, objectively, 'sufficiently serious;'" and (2) a prison official must have acted with a "sufficiently culpable state of mine," which in cases concerning inmate health or safety is "deliberate indifference." Id. at 834.

The law is clearly established that the rape or sexual assault of an inmate by a prison guard can constitute a violation of the Eighth Amendment. Castillo v. Day, 790 F.3d 1013, 1018-19 (10th Cir. 2015). The Tenth Circuit has stated that "[s]exual abuse is repugnant to contemporary standards of decency and allegations of sexual abuse can satisfy the objective component of an Eighth Amendment excessive force claim." Smith v. Cochran, 339 F.3d 1205, 1212 (10th Cir. 2003). To establish the subjective prong of a deliberate indifference claim, a court must consider "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986). Sexual assault of an inmate can also satisfy the subjective prong of a deliberate indifference claim. Giron v. Corrections Corp. of America, 191 F.3d 1281, 1289 (10th Cir. 1999). There is caselaw

supporting the proposition that an inmate cannot legally consent to have sex with a prison guard due to the disparity in power between inmate and guard. See Lobozzo v. Colorado Dep't of Corrections, 429 F. App'x 707, 711 (10th Cir. 2011);[3] Doe v. Schneider, 2013 WL 5429229, *6 (E.D. Pa. Sep. 30, 2013); Carrigan v. Davis, 70 F. Supp. 2d 448, 453 (D. Del. 1999). However, the Tenth Circuit has rejected the argument that a prison guard automatically commits an Eighth Amendment violation by having sex with a female inmate if there is sufficient evidence that the inmate consented. Graham v. Sheriff of Logan County, 741 F.3d 1118, 1126 (10th Cir. 2013).

The evidence is undisputed that some type of sexual activity took place in plaintiff's hospital room, and plaintiff testified in her deposition that she was repeatedly raped and sexually assaulted by Peters. Dkt. # 75-11, at 25-49. The law is clearly established that the sexual assault of an inmate can constitute a constitutional violation. Peters argues that he engaged in consensual sexual activity with plaintiff and he did not violate plaintiff's constitutional rights. Dkt. # 83, at 7. However, Peters blatantly ignores the evidence produced by plaintiff in response to his motion for summary judgment, and plaintiff has presented evidence from which a reasonable trier of fact could infer that plaintiff was repeatedly sexually assaulted by Peters and that the sexual conduct was unwelcome and involuntary. There is a genuine dispute as to what actually happened in plaintiff's hospital room and if the sexual activity that occurred was consensual. The Court cannot resolve this issue on a motion for summary judgment. Plaintiff has met her burden to come forward with evidence that Peters' conduct was objectively sufficiently serious to constitute a constitutional violation, and the same evidence could also support a finding that Peters acted maliciously and with the intent to harm

---

[3] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

plaintiff. For the purpose of Peters' qualified immunity defense, plaintiff has presented sufficient evidence from which a reasonable trier of fact could find that a constitutional violation occurred, and the Court has found that the law supporting plaintiff's claim was clearly established. The Court finds that Peters is not entitled to qualified immunity as to plaintiff's deliberate indifference claim, and his motion for summary judgment should be denied.

## IV.

### A.

The Board argues that it has no authority or control over the Mayes County Jail, and it is not a proper party for plaintiff's § 1983 claim concerning her alleged mistreatment by an employee of the Mayes County Jail. Plaintiff responds that the Board is a proper party and it can be held liable under theory that it failed to enact appropriate policies to prevent the sexual abuse of female inmates.

The Board's primary argument is that the a board of county commissioners cannot be held liable for the conduct of an employee of the Mayes County Jail unless the plaintiff can establish that the employee was acting pursuant to an official policy or custom of the Board. Dkt. # 55, at 17. In Meade v. Grubbs, 841 F.2d 1512 (10th Cir. 1988), the Tenth Circuit held that the sheriff, not the county commissioners, is the appropriate party for a § 1983 excessive force claim alleging that an inmate was mistreated by deputies of a county jail. Id. at 1528. County commissioners can be held individually liable for the acts of a jail employee only if they voluntarily assumed a responsibility for hiring, firing, or supervising jail employees. Id. Although Meade concerned claims directly against the county commissioners, subsequent decisions by federal district courts in Oklahoma have found that the board of county commissioners has no statutory duty to hire, train, supervise, or discipline county sheriffs or deputies. See Cink v. Grant County, Oklahoma, 2015 WL 431409

11

(W.D. Okla. Feb. 2, 2015); Goss v. Bd. of County Commr's of Creek County, 2014 WL 4983856 (N.D. Okla. Oct. 6, 2014). However, recent decisions by the Oklahoma Court of Civil Appeals call into question whether as a matter of state law the Board has a statutory duty to provide a county jail, and the Board has been found to be a proper party in some instances. Edelen v. Bd. of Commr's of Bryan County, 266 P.3d 660, 665-66 (Okla. Civ. App. 2011); Bryson v. Oklahoma County ex rel. Oklahoma County Detention Center, 261 P.3d 627, 636-38 (Okla. Civ. App. 2011). Some federal district courts have cited these cases for the proposition that a county board of commissioners can be named as a party in a § 1983 claim concerning allegedly unconstitutional conditions of confinement. See Wright v. Stanley, 2015 WL 3606390 (W.D. Okla. June 8, 2015); Harper v. Woodward County Bd. of County Commr's, 2014 WL 7399367 (W.D. Okla. Dec. 29, 2014); DuBois v. Bd. of County Commr's of Mayes County, Oklahoma, 2014 WL 4810332 (N.D. Okla. 2014). The Court finds that it is unnecessary to resolve the issue of the Board's liability purely as a matter of law, because defendant's motion for summary judgment can be granted on other grounds.

Plaintiff argues that the Board can be held liable under a municipal liability theory, because the Board has the statutory duty to maintain a jail and it should have been on notice that there was a risk of harm to female inmates. Dkt. # 75, at 24-28. Under § 1983, a local government or municipality may be held liable for adopting an official policy or custom causing a violation of constitutional rights, but local governments can not be sued under a respondeat superior theory of liability. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). "[T]o establish municipal liability, a plaintiff must show: 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006). It is not enough for a plaintiff to allege that the actions of a

12

governmental employee injured her. Olsen v. Layton Hills Mall, 312 F.3d 1304, 1318 (10th Cir. 2002). "Instead, it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." Seamons v. Snow, 206 F.2d 1021, 1029 (10th Cir. 2000).

Plaintiff argues that the Board should have known of a risk of harm to female inmates but it failed to take any action to prevent male guards from interacting with female inmates. Dkt. # 75, at 24. She claims that there was no official policy concerning contact between male guards and female inmates or the appropriate conduct for a guard while providing security outside of the jail. The evidence shows that the jail administrator, Murry, was aware of these deficiencies and that a "policy modification" was underway before November 15, 2013. Dkt. # 75-1 (memorandum by Murry stating that "policy modifications" began on October 15, 2013). Plaintiff argues that there was inherently an increased risk of harm to female inmates when they were supervised by male guards. Dkt. # 75-4, at 9. The Tenth Circuit has explicitly rejected this argument in the context of an excessive force claim and, to be considered as evidence of municipal liability, a plaintiff must produce some evidence that the policymaker knew there was a risk that the guard monitoring plaintiff would actually assault her. Barney v. Pulsipher, 143 F.3d 1299, 1311 (10th Cir. 1999); Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir. 1993). Plaintiff argues that there is evidence that male guards entered the area where female inmates were held and that the Sheriff was aware of this. Dkt. # 75-17, at 2. However, plaintiff was not in custody at the Mayes County Jail when the incidents occurred and there is no evidence that the Sheriff had any knowledge of a male guard entering plaintiff's hospital room. The evidence cited by plaintiff also references conduct that was

occurring in the Spring of 2013, before Peters was hired, and there is no evidence that Peters ever entered an area housing female inmates without an appropriate backup officer or that other male detention officers were engaging in this conduct during the time period relevant to plaintiff's claim. Id. Plaintiff complains that the Mayes County Jail had "limited female staff" and this increased the risk that male detention officers would supervise female inmates. Dkt. # 75, at 25. By itself, the limited number of female detention officers does not tend to show that the Board or the Sheriff had a policy against hiring female detention officers. Plaintiff has provided no evidence suggesting there were female applicants that were turned away or even if there were any female applicants, and the number of female detention officers is not evidence of a policy to increase the risk of harm to female inmates. Plaintiff claims that Peters should not have been permitted to guard plaintiff by himself, because he had been employed for only two months and he was inadequately trained. Id. at 26. This does not tend to show that the policymaker for the jail should have known that Peters would engage in inappropriate conduct with a female inmate. The evidence shows that Peters had no known history of sexual misconduct before he was hired, that he was warned that female inmates may use their sexuality to obtain favors, and that he knew that it was "common sense" not to engage in sexual conduct with female inmates. Dkt. # 55-1, at 7-8; Dkt. # 55-2. Plaintiff also claims that Salyers was terminated after he was charged with domestic assault and battery but he was subsequently rehired as a detention officer. Dkt. # 75, at 25-26. There is no evidence that Salyers ever physically or sexually abused a female inmate at the jail and, while Salyers' criminal history is unfortunate, it does not show that the Mayes County Jail had a policy that would permit or encourage the sexual abuse of female inmates.

Even the Court were to find that the Board was a proper party for plaintiff's § 1983 claim, the Court finds that plaintiff has not established that an unconstitutional policy or custom at the Mayes County Jail had any role in the misconduct committed by Peters. Considering the evidence in a light most favorable to plaintiff, she has shown that a detention officer allegedly sexually assaulted her while she was a pretrial detainee in the custody of the Mayes County Jail. However, it is not enough for plaintiff to show that a county employee committed an act that allegedly violated her constitutional rights, because a municipal entity cannot be held liable under § 1983 under a respondeat superior theory. Seifert v. Unified Government of Wyandotte County/Kansas City, 779 F.3d 1141, 1159 (10th Cir. 2015). She must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bd. of County Commr's of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997). The Court finds no causal link between any official policy or custom of the Sheriff or the Board and the harm alleged by plaintiff, and the Board is entitled to summary judgment on plaintiff's § 1983 claim.

**B.**

Plaintiff has also alleged a state law claim against the Board on the theory that Peters' actions constituted excessive force and the Board is liable under a respondeat superior theory as a matter of state law. Plaintiff relies on Bosh v. Cherokee County Building Authority, 305 P.3d 994 (Okla. 2013), to support her argument that she has a private right of action under the Oklahoma Constitution for an excessive force claim against a prison or prison officials under a respondeat superior theory. The Board argues that Peters was not acting within the scope of his employment

when he allegedly sexually assaulted plaintiff, and it cannot be held liable under Bosh. Dkt. # 55, at 30-32.

In Bosh, the Oklahoma Supreme Court recognized a private right of action for excessive force claims by prison inmates under OKLA. CONST. art 2, § 30, because such claims were barred by the Oklahoma Governmental Tort Claims Act (GTCA) and prison inmates would not otherwise have a remedy under state law for excessive force committed by prison officials. 305 P.3d at 1001. The Bosh case concerned the brutal beating of an inmate that was caught on surveillance cameras, and the United States District Court for the Eastern District of Oklahoma had dismissed the plaintiff's claim under the GTCA. Id. at 997. The federal district court certified a question to the Oklahoma Supreme Court on the issue of whether an inmate could bring a private right of action under the Oklahoma Constitution for excessive force. The Oklahoma Supreme Court found that a private right of action existed and the claim could be brought against the employer of the detention officer who allegedly harmed the inmate if the acts occurred within the scope of employment Id. at 1001. Under Oklahoma law generally, an employer can be held liable "for the wilful acts of an agent or employee acting within the scope of employment in furtherance of assigned duties." Id. at 998. Although an assault is generally not within the scope of an employee's duties, the Oklahoma Supreme Court noted that the use of force is sometimes an essential part of a law enforcement officer's job duties. Id. at 1000. For the purpose of a Bosh claim, pretrial detainees and convicted inmates are subject to the same protections, and the standard to determine whether a detention officer's use of force is "actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Id. at 1001 n. 32.

Viewing the evidence in a light most favorable to plaintiff, she alleges that she was repeatedly raped and sexually assaulted over a 12 hour period and that she did not consent to any sexual acts with Peters. She does not argue that Peters acted with a legitimate disciplinary purpose when he allegedly sexually assaulted her, but she claims that Peters was on duty and a jury should be permitted to determine if Peters was acting within the scope of his employment. Dkt. # 75, at 30. However, Oklahoma courts have consistently found that sexual assaults committed by an employee are not actions taken in furtherance of an employee's duties. Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 161 (Okla. 2008); N.H. v. Presbyterian Church (USA), 998 P.2d 592, 599-600 (Okla. 1999). At lease one federal district court has found that a detention officer who allegedly sexually assaulted several female inmates was not acting within the scope of his employment and prison officials could not be held liable under Bosh for such conduct. Koch v. Juber, 2014 WL 2171753, *3-4 (W.D. Okla. May 23, 2014). The Court finds that the sexual assaults allegedly committed by Peters cannot reasonably be viewed as occurring within the scope of Peters' employment, because the sexual assaults or rapes could have no legitimate purpose in maintaining discipline and were wholly outside of the scope of Peters' employment. The Board cannot be held liable under Bosh for Peters' conduct and the Board is entitled to summary judgment on this claim.

**IT IS THEREFORE ORDERED** that Defendant Board of County Commissioners of Mayes County's Motion for Summary Judgment and Brief in Support (Dkt. # 55) is **granted**, and Defendant Aaron Peters' Motion for Summary Judgment (Dkt. # 58) is **denied**.

**IT IS FURTHER ORDERED** that the Court shall entered an amended scheduling order in light of the Court's decision to deny Peters' motion for summary judgment.

**DATED** this 31st day of August, 2015.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE